**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**JAMES MCROY,**

**Plaintiff,**

**v.**

**DANA NEWTON, AMBER LOOS, MATTHEW JOHNSON, JOHN R. BALDWIN, KAREN JAIMET, SCOTT THOMPSON, CHERYL BOLLING, and JOHN AND JANE DOES 1-35,**

**Defendants.**

**Case No. 3:18-CV-02163-NJR**

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Docs. 77, 78) filed by Defendants Scott Thompson, Amber Loos, Dana Newton, Cheryl Bolling, Karen Jaimet, John Baldwin, Gladyse Taylor and Matthew Johnson. For the reasons set forth below, the Motion is granted in part and denied in part.

## BACKGROUND

On December 11, 2018, Plaintiff James McRoy, an inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Illinois River Correctional Center, filed his Complaint pursuant to 42 U.S.C. § 1983 alleging Defendants denied him access to the courts and retaliated against him for filing grievances and, therefore, violated his constitutional rights (Doc. 1). His complaint was dismissed without prejudice on May 23,

2019, for failure to state a claim for which relief could be granted (Doc. 16). He later filed an Amended Complaint on July 23, 2019 (Docs. 1, 21). Specifically, McRoy was allowed to proceed on the following counts:

> Count 1: First and/or Fourteenth Amendment claim against Baldwin, Jaimet, Thompson, and John/Jane Does 1-30 for denying McRoy access to the courts by interfering with and/or mishandling McRoy's mail to and from the courts.
>
> Count 2: First and/or Fourteenth Amendment claim against Baldwin, Jaimet, Newton, Loos, Bolling, and Taylor for denying McRoy access to the courts by failing to provide McRoy with adequate access to the law library and his excess legal storage boxes.
>
> Count 4: First and/or Fourteenth Amendment claim against Lieutenant M. Johnson for refusing to mail McRoy's outgoing legal mail until it could be inspected for contraband.
>
> Count 5: First Amendment retaliation claim against Lieutenant M. Johnson, Bolling, and John/Jane Does 31-35 for moving McRoy several times, forcing him to open sealed legal mail, and writing him a disciplinary ticket for filing grievances regarding law library access.

(Doc. 30).

Defendants move for summary judgment in part on the issue of failure to exhaust administrative remedies regarding Count 1, Count 2, and Count 5 (Doc. 78, p. 2). They argue that McRoy failed to exhaust his administrative remedies despite the grievance process being available to him, and that he failed to name specific Defendants within the grievances (Doc. 78). Defendants also argue that there is no evidence showing McRoy filed grievances alleging retaliation by Defendants (*Id*. at p. 6).

McRoy argues that he attempted to exhaust his administrative remedies, yet

Defendants kept him from being able to resolve the disputes through the administrative process by ignoring him (Doc. 100, p. 5). McRoy further argues he asserted enough information and facts to put the facility on notice despite not indicating specific names in his grievances (*Id.* at p. 6).

## RELEVANT GRIEVANCES

After reviewing the extensive record, the Court finds the following grievances to be relevant to both McRoy's claims and Defendants' motion for summary judgment.

### I. October 9, 2017

McRoy filed an emergency grievance on October 9, 2017, complaining of the non-delivery of his legal mail (Doc. 78-1, pp. 16-17). The Grievance Officer recommended that the grievance be denied because mailroom staff indicated McRoy did not have sufficient funds to send the mail (*Id.* at 15). The Chief Administrative Officer ("CAO") concurred in the denial on October 26, 2017 (*Id.*). McRoy appealed to the Administrative Review Board ("ARB") on November 15, 2017 (*Id.* at pp. 38-42). The ARB denied McRoy's grievance on November 22, 2017 (*Id.* at p. 14).

### II. February 19, 2018

On February 19, 2018, McRoy filed a grievance complaining of being unable to staple his legal paperwork together due to a defunct, heavy-duty stapler in the law library, which resulted in pleadings from the Illinois Supreme Court being returned (Doc. 21, pp. 57-60). The Grievance Counselor denied the grievance on February 21, 2018 (*Id.* at p. 57). McRoy appealed to the Grievance Officer on February 28, 2018 (*Id.* at pp. 85-88). On March 23, 2018, less than a month following his appeal to the Grievance Officer,

McRoy sent an Offender Request asking for a response from the Grievance Officer (Doc. 1-3, p. 42). McRoy then wrote to the ARB on April 5, 2018, saying he received no response (Doc. 21, p. 89). McRoy sent requests later in April to the Grievance Counselor asking for a response regarding the appeals he submitted to the Grievance Officer (Doc. 1-3, p. 78). On April 19, 2018, McRoy sent an Offender Request to the Grievance Office and Ms. Hale, the new Grievance Officer, and she replied, "I have no record of receiving this grievance." (*Id*. at p. 79). McRoy then sent an Offender Request to the Counselor on April 24, 2018, saying, "I need to hand you a grievance appeal." (*Id*.). McRoy received a response from the ARB on April 25, 2018, requesting that he provide a response from the Grievance Officer and CAO (*Id*. at p. 43).

McRoy filed an Offender Request to the Grievance Officer on April 30, 2018, asking for confirmation of receipt of his resubmitted grievance and for an answer to the grievance (Doc. 1-3, p. 80). On May 1, 2018, McRoy received a memorandum from the Grievance Officer saying his original grievance must be submitted before the Grievance Officer can respond (*Id*. at p. 81). McRoy resubmitted his grievance that same day and sent an Offender Request to the Grievance Officer, Ms. Hale (*Id*. at p. 80). In this request, McRoy said he was providing a grievance appeal and said he addressed the original grievance and exhibits to Mr. Flatt, a previous Grievance Officer, so he was submitting a copied grievance appeal (*Id*.).

McRoy sent yet another Offender Request to the Grievance Officer on May 8, 2018, asking for a response (Doc. 1-3, p. 83). McRoy sent an Offender Request to the Grievance Counselor on May 15, 2018, asking for a follow-up on his resubmitted grievance he sent

to the Grievance Officer on May 1, 2018 (*Id*.). On May 17, 2018, McRoy sent yet another Offender Request to the Grievance Counselor asking for a response and stating he received a response from the Grievance Officer in which she said she had not received the resubmitted grievance appeal (*Id*. at p. 84). McRoy sent another Offender Request to the Grievance Counselor three days later asking for a response (*Id*. at p. 85). McRoy received a memorandum from the Grievance Officer on May 21, 2018, stating McRoy's grievance was untimely, that he needed to use the proper grievance form and submit the original grievance, and they had no record of receiving the original grievance (*Id*. at p. 86).

**III. May 23, 2018**

McRoy filed his May 23, 2018 grievance complaining of the lack of response regarding the February 2018 grievance (Doc. 21, pp. 91-92). He said he made copies of his original grievance and mailed an appeal letter including the original grievance and exhibits to Mr. Flatt, the Grievance Officer (*Id*. at p. 91). McRoy also said he wrote numerous requests for a response to no avail, and he wrote an appeal to the Director due to no timely response from the Grievance Officer (*Id*. at pp. 91-92). McRoy filed an Offender Request on June 11, 2018, asking for a response to this grievance (Doc. 1-3, p. 85). McRoy received a memorandum from the Grievance Officer on June 18, 2018, saying the grievance was not timely submitted and, "PNK Grievance records indicate that only one grievance from grievant was received…The copies you attached indicate that you did not follow procedures…" (*Id*. at p. 93). McRoy appealed to the Director on July 13, 2018 (*Id*. at p. 91). On July 31, 2018, the ARB responded saying the grievance was not timely submitted (*Id*. at p. 90).

## IV. July 6, 2018

McRoy filed a grievance on July 6, 2018, complaining of issues with his legal mail and legal boxes in the law library (Doc. 21, pp. 153-54). McRoy said his legal boxes were opened and "ransacked" with the contents in "shambles" (*Id*. at p. 153). McRoy mentioned speaking to Mrs. Newton, the law librarian, about this issue, and he said he was never informed by the mailroom that his legal boxes had arrived (*Id*. at pp. 153-54). The Grievance Counselor denied this grievance on July 30, 2018 (*Id*. at p. 153). McRoy appealed the Grievance Counselor's denial to the Grievance Officer on August 1, 2018 (*Id*. at p. 155). McRoy later appealed to the ARB on October 19, 2018, because he was given no response from the Grievance Officer (*Id*. at p. 157).

## V. September 11, 2018

McRoy filed his September 2018 grievance complaining of the non-delivery of his legal mail and asking for a trace to be done on his missing documents (Doc. 78-1, p. 5). On September 27, 2018, McRoy sent requests to the Grievance Counselor requesting a response to his grievance (Doc. 21, p. 137). On October 7, 2018, McRoy again sent requests to the Grievance Counselor requesting a response to his grievance (*Id*.). The Grievance Counselor responded on October 8, 2018 (*Id*. at p. 5). McRoy appealed the Grievance Counselor's decision to the Grievance Officer on October 30, 2018 (*Id*. at pp. 7-8). The Grievance Officer provided a timely response on December 11, 2018, and McRoy appealed that decision in a timely manner to the ARB on January 8, 2019 (*Id*. at pp. 2-4, 10). The ARB declined McRoy's appeal on January 15, 2018 (*Id*. at p. 1).

**VI. April 2, 2019**

McRoy filed a grievance on April 2, 2019, claiming he was being retaliated against "for filing grievances and court litigation against [the prison]" (Doc. 78-1, p. 44). McRoy claimed this retaliation came in the form of denial of certain documents, indigent supplies, access to legal boxes, being put on the priority scheduling list in the law library, and more (*Id*. at pp. 44-45). The Grievance Counselor denied the grievance on April 4, 2019 (*Id*. at p. 44). McRoy appealed the Grievance Counselor's denial to the Grievance Officer on April 16, 2019 (*Id*. at p. 48). The ARB denied the grievance on May 21, 2019 (*Id*. at p. 43).

## LEGAL STANDARDS

**I. Summary Judgment Standard**

Summary judgment is proper if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)).

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion

requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur *before* the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). In other words, a plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit sets forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison official prevent a prisoner from exhaustion his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if

> there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

## II. Illinois Exhaustion Requirement

As an IDOC inmate, McRoy was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 ILL. ADMIN. CODE §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the Grievance Counselor within 60 days of the discovery of an incident. 20 ILL. ADMIN. CODE §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the Grievance Officer. 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 ILL. ADMIN. CODE §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id*.

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id*. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender," and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified

in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE §504.850(f).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 F. App'x. 10, 13 (7th Cir. 2009). If further remedies are unavailable, the inmate is deemed to have exhausted. *Id*. Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 F. App'x at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

## ANALYSIS

### I. Identification of Defendants

Defendants argue that McRoy's October 2017, September 2018, and April 2019 grievances[1] were insufficient to exhaust his specific claims against Defendants

[1] Defendants neither mentioned nor discussed three other grievances relevant to Counts 1 and 2, dated February 19, 2018, May 23, 2018, and July 6, 2018 (Doc. 78). Instead, Defendants discussed only the three grievances McRoy submitted to the ARB, specifically grievances dated October 9, 2017, September 11, 2018,

individually because he did not name them or provide information that would put the prison on notice of his complaints.

The Illinois Administrative Code sets forth what information must be included in a grievance:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(b).

The Seventh Circuit has recognized, however, that while the Illinois Administrative Code now requires the name or a description of the persons involved in the complaint, the "Department of Corrections has been slow to make that requirement explicit in the forms it gives inmates." *Conley v. Anglin*, 513 F. App'x 598, 601 (7th Cir. 2013) ("We have held that when a prisoner uses a grievance form asking only for a 'Brief Summary of Grievance,'…then the omission of names or identifying information does not necessarily mean that the prisoner failed to exhaust his administrative remedies so long as he otherwise followed the grievance process."). Thus, when a prisoner uses a grievance form that only asks for a "Brief Summary of Grievance," the Court of Appeals has held that the omission of names or identifying information is not dispositive of the issue. *Id.*; *Maddox v. Love*, 655 F.3d 709 (7th Cir. 2011).

---

and April 2, 2019 (*Id.*). Because the additional grievances unmentioned by Defendants are applicable to the counts in this case, they will be discussed here.

Here, the grievance forms used by McRoy for the October 2017, February 2018, May 2018, July 2018, and September 2018 grievances only ask for a "Brief Summary of Grievance" (Doc. 78-1, pp. 5, 16; Doc. 21, pp. 57, 91, 153). They did not instruct McRoy to set forth the name of each person involved or to provide identifying information (*Id.*). Moreover, the information McRoy included is enough to give notice to the right parties as his grievances stated concerns regarding the mailroom and law library attendants (*Id.*); *See Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (all the PLRA requires is to "alert[] the prison to the nature of the wrong for which redress is sought[.]") (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Other than McRoy's July 2018 grievance in which he explicitly names Mrs. Newton, the law librarian, McRoy's grievances regarding the law library and mailroom clearly identify those who he believes are responsible for the issues with his legal mail and access to the law library and supplies as, within his grievances, he mentioned multiple times that his complaints were in regards to the mailroom and library (Doc. 78-1, pp. 5, 16-17, 44-46). While McRoy did not explicitly name specific individuals, McRoy's grievances provided sufficient notice.[2]

## II. Failure to Exhaust Through ARB

If McRoy never received a response to his grievances, then his attempts at exhaustion would be deemed thwarted, and he would be allowed to proceed with his lawsuit. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (an inmate is not required

[2] The Court notes that the form used for McRoy's April 2019 grievance said not only "Brief Summary of Grievance," but also "Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved" (Doc. 78-1, p. 44). For the reasons set forth below, this issue is of no moment because McRoy filed the April 2019 grievance after he initiated this lawsuit.

to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole*, 438 F.3d at 809 (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources).

*a. Count 1*

Count 1 concerns the First and/or Fourteenth Amendment regarding the denial of access to the courts by Defendants interfering with and/or mishandling McRoy's mail to and from the courts. The grievances relevant to Count 1 are the October 9, 2017, February 19, 2018, May 23, 2018, and September 11, 2018 grievances.

Defendants are correct that McRoy's September 11, 2018 grievance is deficient. That grievance did not receive a response from the ARB until January 15, 2019, a little over a month after McRoy filed this lawsuit (Doc. 78-1, p. 1).

There is no dispute, however, that McRoy exhausted his October 9, 2017 grievance, as he appealed its denial through the ARB. Furthermore, McRoy is deemed to have exhausted his February 2018 grievance due to Defendants' failure to respond. McRoy used the appropriate steps when he filed his grievance regarding lack of access to a heavy-duty stapler and appealed the Grievance Counselor's response to the Grievance Officer shortly thereafter (Doc. 21, pp. 57-60, 85-88). But despite his efforts to deliver the correct documents to the correct parties, McRoy still never received a response from the Grievance Officer and, consequently, the ARB, regarding the February 2018 grievance.

The May 2018 grievance supports McRoy's argument that he never received a response to the February 2018 grievance. Although it may be true that McRoy's efforts at

times were redundant and impatient in nature, McRoy has shown his efforts were thwarted by the actions or inactions of Defendants regarding the exhaustion of his administrative remedies.

Accordingly, McRoy exhausted his administrative remedies as to his claims in Count 1.

*b. Count 2*

Count 2 concerns a First and/or Fourteenth Amendment claim regarding the denial of access to the courts by Defendants failing to provide McRoy with adequate access to the law library and his excess legal storage boxes. The grievances relevant to Count 2 are the July 6, 2018 and April 2, 2019 grievances.

McRoy submitted the April 2, 2019 grievance almost four months following the filing of this lawsuit (Doc. 78-1, p. 44). Accordingly, this grievance does not serve to exhaust Count 2.

McRoy's July 6, 2018 grievance concerned his legal boxes being opened in the law library. On July 30, 2018, the Counselor responded by stating that excess legal materials and boxes are not afforded the same privilege as incoming legal mail. McRoy went through the proper steps by filing the grievance with the Grievance Counselor and later appealing that decision to the Grievance Officer (Doc. 21, pp. 153-55). But McRoy never received a response from the Grievance Officer.

Again, Defendants' failure to respond to McRoy's grievances prevented him from exhausting his resources. *Dole*, 438 F.3d at 809. Therefore, this Court finds that McRoy exhausted his administrative remedies as to his July 6, 2018 grievance.

c. *Count 5*

None of the relevant grievances mentions the issues McRoy raises in Count 5. Thus, he has not exhausted those claims.

## CONCLUSION

For these reasons, the motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Scott Thompson, Amber Loos, Dana Newton, Cheryl Bolling, Karen Jaimet, John Baldwin, Gladyse Taylor and Matthew Johnson (Docs. 77, 78) is **GRANTED in part** and **DENIED in part**. Because McRoy did not exhaust his administrative remedies with regard to his allegations in Count 5, that claim is **DISMISSED**.

This case shall now proceed on Count 1, Count 2, and Count 4.

**IT IS SO ORDERED.**

**DATED: March 12, 2021**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**