IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES MCROY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JOHN BALDWIN, CHERYL BOLLING,<br>KAREN JAIMET, DANA NEWTON<br>MATTHEW JOHNSON, AMBER LOOS,<br>GLADYSE TAYLOR, and<br>SCOTT THOMPSON,<br><br>　　　　Defendants. | Case No. 3:18-CV-2163-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff James McRoy is an inmate in the Illinois Department of Corrections ("IDOC") who claims his constitutional rights to send and receive mail and to petition the government for redress of grievances were violated by various officials at Pinckneyville Correctional Center. (Doc. 112). Defendants have moved for summary judgment on McRoy's claims, and the motion is fully briefed. (Docs. 134, 138, 139). For the following reasons, Defendants' motion is granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff James McRoy was incarcerated at Pinckneyville Correctional Center from November 23, 2016, until September 18, 2019, when he was transferred to another IDOC facility. (Doc. 135-2). At the time McRoy filed this lawsuit on December 11, 2018, he had pending Freedom of Information Act cases and possibly a "couple of appeals going" in Illinois state court. (Doc. 135-1 at p. 2). McRoy also had a post-conviction petition

pending, but he had counsel representing him in that case. (*Id.* at p. 3).

Defendant Dana Newton was a law librarian at Pinckneyville, and Defendants Cheryl Bolling and Amber Loos were paralegal assistants at Pinckneyville. (Docs. 135-3, 135-4, 135-5). As paralegal assistants, Bolling and Loos would work in the law library as assistants and would put in the call passes for the law librarian. (Docs. 135-4, 135-5). They also would allow individuals who had a call pass to access the law library. (*Id.*). Only 15 inmates were allowed access to the law library at one time. (Doc. 135-4).

Prison records indicate McRoy was issued call passes to the law library almost every month in 2017, 2018, and 2019, with 20 call passes to the law library and seven call passes to legal documents in an eight-month period in 2017 alone. (Doc. 135-5). McRoy testified that even though he may have had call passes, he did not always get to go to the library. (Doc. 135-1 at p. 5). According to McRoy, Defendants Newton, Bolling, and Loos refused him access to the law library even though he had pending cases. (Doc. 135-1 at pp. 3-4). Defendants gave him various reasons for not being able to access the library, "from lockdowns to not having access to material." (*Id.* at p. 4). As a result, McRoy had to file numerous motions for extension of time in his cases. (*Id.*).

Newton, Bolling, and Loos also refused McRoy access to a heavy-duty stapler, which caused the Illinois Supreme Court to return a filing. (*Id.* at p. 5). McRoy was able to resubmit his filing to the Illinois Supreme Court, however, and the Court accepted it. (*Id.*). Newton attested that the heavy duty stapler was broken at some point, and the law library was not able to get a new one because it could be used as a weapon. (Doc. 135-3). She further attested that, if McRoy had something to file, his visit to the law library would

take priority based on the deadline list. (*Id.*).

For one hour each Friday, up to 10 inmates were allowed access to their excess legal boxes, which were stored in the law library. (Doc. 135-4). There were several times when McRoy discovered his legal boxes had been opened and ransacked outside of his presence, with several documents missing. (Doc. 135-1 at pp. 5, 9). McRoy testified that he assumes the law librarians opened his legal boxes since they were in charge of the library, but he does not know for sure. (*Id.*).

Matthew Johnson was a lieutenant at Pinckneyville at the time of the events at issue. Johnson required McRoy to open sealed "bulk" mail that was addressed to the Illinois Supreme Court and marked as "legal mail." (*Id.* at pp. 4-5). Johnson attested that he told McRoy to open the package so Johnson could determine whether it was actually legal mail and to search it for contraband. (Doc. 135-10). The mail was then resealed and sent out. (*Id.*).

During the relevant time period, Defendant John Baldwin was the director of the IDOC and Gladyse Taylor was the acting director of the IDOC. McRoy has never spoken to Baldwin. (Doc. 135-1 at p. 5). Nevertheless, he sued Baldwin because he was the IDOC director and responsible for the overall operations of the IDOC. (*Id.*)

Defendant Karen Jaimet was warden of Pinckneyville from 2017 to September 2018. Scott Thompson was the acting warden of Pinckneyville after September 2018. Although McRoy does not recall speaking to Jaimet about his library or legal mail issues, he stated that he sued her because she was the warden, in charge of day-to-day issues, and she would have known about his problems through the grievance process. (*Id.* at

pp. 5-6). McRoy thought he had conversations with Thompson about his legal mail, as well as access to the law library and his legal property, but he cannot recall any specific conversations. (*Id.* at p. 6).

McRoy initiated this lawsuit in December 2018 and is now proceeding on the Second Amended Complaint. (Doc. 112). McRoy brings three claims, each of which assert a violation of his rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution. (*Id.*).

In Count I, McRoy alleges Defendants Baldwin, Taylor, Jaimet, and Thompson, as IDOC directors or wardens of Pinckneyville, created and implemented procedures, policies, practices, and customs that denied McRoy access to the courts, law library, and legal materials. (*Id.*). In Count II, McRoy claims Defendants Newton, Loos, and Bolling denied him access to the courts, law library, and his legal materials when they denied him access to the law library, his legal materials, and a heavy duty stapler. (*Id.*). Count II also alleges that Defendants Baldwin, Taylor, Jaimet, and Thompson, as IDOC Directors or Wardens of Pinckneyville, adopted the procedures, policies, practices, and customs that denied McRoy access to the courts, law library, and legal materials. (*Id.*). Finally, in Count III, McRoy claims Defendant Matthew Johnson denied him access to the courts and legal resources by refusing to mail his outgoing legal mail until it could be inspected for contraband. (*Id.*).

## LEGAL STANDARD

Summary judgment is proper if the movant shows that no material facts are in genuine dispute and that he is entitled to judgment as a matter of law. *Machicote v.*

*Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (citing FED. R. CIV. P. 56(a)). "A genuine dispute over a material fact exists if 'the evidence is such that a reasonable jury could return a verdict' for the nonmovant." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

### I. Defendant Johnson

"Inmates have a First Amendment right both to send and receive mail, but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband." *Kaufman v. McCaughtry*, 419 F. 3d 678, 685 (7th Cir. 2005) (internal citations omitted). "The term 'legal mail' does not encompass everything an inmate sends and receives related to a lawsuit or even every piece of mail deemed 'legal' or 'privileged' pursuant to the Illinois Administrative Code. *Mason v. Cecil*, No. 19-CV-01375-SPM, 2023 WL 2572610, at *3 (S.D. Ill. Mar. 20, 2023) (recognizing that the term "privileged mail" is a creation of IDOC regulations and that prisoners have no constitutional right to see that IDOC regulations are enforced).

The Seventh Circuit Court of Appeals has explained the difference between prison officials opening legal mail to or from an attorney and prison officials opening mail to or from a court. *Guajardo-Palma v. Martinson*, 622 F. 801, 804 (7th Cir. 2010). "The Fourteenth Amendment guarantees meaningful access to courts, [and] . . . the opportunity to

communicate privately with an attorney is an important part of that meaningful access." *Id.* at 802. In the context of a civil case involving the prison, if prison officials could read a prisoner's legal mail, they would learn the inmate's legal strategy. *Id.* "This would give the defendants a litigating advantage sufficient . . . to violate the prisoner's constitutional right to access to the courts[.]" *Id.* On the other hand, mail between a court and an inmate often constitutes public documents that prison officials have as much right to read as the prisoner, and even nonpublic documents are often routine and non-sensitive. *Id.* at 804.

Regardless of the sender or recipient, however, "no legal mail is sacrosanct." *Id.* To that end, an isolated incident of interference with the confidentiality of such communications is likely to have no effect on a prisoner's access to justice. *Id.* To accommodate both the prisoner's right to confidential communications with his lawyer (and sometimes with a court or agency) and the prison's interest in security, the Seventh Circuit has held that prison employees should be allowed to open incoming mail from a prisoner's lawyer to verify it is legal mail from an attorney authorized to practice law and is in fact the prisoner's lawyer. *Id.* At the same time, the prisoner should be present when the letter is opened. *Id.*

Here, Defendant Johnson told McRoy to open what McRoy described as bulk mail addressed to the Illinois Supreme Court. The mail was opened by McRoy, Johnson searched it for contraband, then it was resealed and sent out. Thus, Defendants argue, McRoy's constitutional rights were not violated. In response, McRoy cites to the Illinois Administrative Code and asserts there was no penological interest in opening his privileged mail.

Contrary to McRoy's argument, the prison does have a penological interest in maintaining security. *See Kaufman*, 419 F.3d at 685. While an inmate's legal mail is "entitled to greater protections because of the potential for interference with his right of access to the courts," that concern simply is not present here. The evidence in the record shows that Johnson wanted to confirm the "bulk" mail was legal mail and that it did not contain contraband. The mail was opened, not only in McRoy's presence, but by McRoy himself. And there is no indication that Johnson saw the contents of the mail or that McRoy's ability to litigate any matter was impacted by Johnson's actions. *See id.* at 686.

Because McRoy has failed to demonstrate that Johnson violated his constitutional rights by denying him access to the courts and legal resources, the Court finds that Johnson is entitled to summary judgment on the claims in Count III.

## II.  Defendants Newton, Bolling, and Loos

The First Amendment guarantees the right to redress the government, including access to the courts. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). The right of access to the courts requires prison officials to provide prisoners with the necessary tools to attack their sentences and challenge the conditions of their confinement. *Id.* "But because that right is to access the *courts* rather than legal materials or law libraries, an inmate will not have a valid claim unless the prison authorities' conduct prejudiced a potentially meritorious challenge to his conviction, sentence, or conditions of confinement." *Henderson v. Pollard*, No. 22-CV-558-JPS, 2023 WL 5040768, at *3 (E.D. Wis. Aug. 8, 2023) (citing *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (lack of access to courts must have caused actual injury); *Bridges*, 557 F.3d at 553 ("A prisoner asserting a denial of access

claim must show an 'actual injury' in the form of interference with a 'nonfrivolous legal claim.'") (internal citations omitted)); *see also Parker v. Evans*, 350 F. App'x 77, 79 (7th Cir. 2009) (inmate has no triable claim unless there is evidence that "prison authorities prevented him from pursuing a nonfrivolous legal action"). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Here, McRoy has not shown any actual injury resulting from the alleged denial of access to the law library, his legal materials, or a heavy duty stapler. During his deposition, McRoy could not point to any cases or claims that were dismissed or that he could not pursue as a result of not being able to access the law library or his legal materials as frequently as he wished. While his initial filing to the Illinois Supreme Court was returned, presumably because it was not stapled, McRoy resubmitted it and the court accepted it. Finally, while McRoy claims his legal boxes were ransacked and documents were missing, he has not provided any proof, other than his own assumptions, that the law librarians did it.

Because McRoy has not demonstrated any injury or prejudice from the delays in visiting the law library, his ability to access to his legal materials, or the lack of access to a heavy duty stapler, the Court finds that Defendants Newton, Bolling, and Loos are entitled to summary judgment on the claims in Count II.

### III.   Defendants Baldwin, Thompson, Taylor, and Jaimet

As to McRoy's remaining claims in Counts I and II against Defendants Baldwin,

Thompson, Taylor, and Jaimet, as IDOC Directors or Wardens of Pinckneyville, those also fail. There is no evidence in the record that these Defendants were personally responsible for any constitutional deprivation. McRoy argues that his grievances, correspondence, and other documents demonstrate that these Defendants were put on notice and either condoned the constitutional violations or "turned a blind eye" to them. But because the evidence does not establish any constitutional violations in the first instance, Defendants Baldwin, Thompson, Taylor, and Jaimet cannot be held liable for creating or adopting any policies or procedures that violated McRoy's constitutional rights. Accordingly, they are entitled to summary judgment on the claims in Count I and II.

## Conclusion

For these reasons, the Motion for Summary Judgment filed by Defendants John Baldwin, Cheryl Bolling, Karen Jaimet, Matthew Johnson, Amber Loos, Dana Newton, Gladyse Taylor, and Scott Thompson is **GRANTED**. Plaintiff James McRoy shall recover nothing. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED: September 18, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**